Good morning. May it please the Court, Your Honor, I stand on behalf of the appellant, Evelyn Relatos. Good morning. I believe there's two issues on the certificate of appealability that was granted. The first one was granted as to strictly the ineffective assistance of counsel, Sixth Amendment, and I believe Judge Bennis, second COA, was issued to expand it for timeliness of the writ. We believe that actually the writ in my reply brief is directed to that. It was filed timely within the one-year period upon Ms. Relatos' learning of the mandatory deportation, and that's also documented in the excerpt of record to the reply brief. As to the ineffective assistance of counsel, we believe that I filed also a 29J letter as to the amended opinion on the Quan case. I filed a copy of the amended Quan decision that was decided after, and that decision by this circuit, and that's what we're requesting, concludes as follows. They remanded it to the district court with instructions to grant the writ, vacate Quan's sentence, and impose a sentence of one day less than one year. And that is what we're exactly requesting in this particular case. Both the Relatos and the Quan case are parallel cases wherein Quan learned years after he completed his sentence that the Immigration Act would call for mandatory deportation on his plea and sentence. This is in comparison to Relatos when she learned while she was on supervised release. That is about the only difference when both attorneys, both in the Quan and in the Relatos case, made the error. The difference essentially is, also, is a misstatement more egregious than no statement whatsoever. In my opening brief that I filed with the court, the Cornell Law Review discusses that. And they felt, or in that law review article which I cited, there also seems to be no reason to distinguish between a situation in which an attorney affirmably misstates the law and one in which he fails to make a statement when a reasonable attorney would have done so. The government cited the Frye case, essentially failure to advise a client of immigration consequences of a conviction without more. It's not a violation of the Sixth Amendment, essentially. But that's really not what we're discussing. We're not talking about the conviction. We're talking about the sentence imposed, not the conviction, because we're not asking that the plea be withdrawn, that the sentence be vacated and returned back. But, however, even in the Frye decision, there is more. And that is the counsel did not advise because he simply forgot the consequences of the immigration, that is, one year and one day makes it an aggravated mandatory deportation. Whereas less than one year is not mandatory deportation. And under the facts of this particular case, Ms. Rualtos would not be deported at all. He also, trial counsel argued, in essence, by asking the Court for one year and one day, did more, as Frye requires, because he affirmably argued for an aggravated felony. Whereas if he argued for less than one. There was a tradeoff, wasn't there? No. If he gets a year and a day, he's going to get credit for some time served. Correct. If he gets less than a year, he's not going to get credit for time served. He's going to do hard time for the whole time. Absolutely correct. So there is a tradeoff, and there was some benefit for the defendant in what counsel asked for. Well, the problem with that was the counsel didn't know that. If counsel would have realized at the time of the sentencing, which is in his declaration, that the immigration consequences would have caused deportation, mandatory, not anything other than mandatory, he would have argued in his declaration for less than the year and a day. The year and a day, I laid out in my brief, essentially would be about a ten-and-a-half-month sentence on a year and a day. Who was representing the defendant in his immigration matter? Ms. Hebbish in San Francisco, I believe. Not this attorney, right? Well, he assisted me. Well, was an independent attorney representing him in the criminal matter and another attorney representing him in the immigration matter? Correct. Was there any coordination? Well, first of all, let me say this. The immigration attorney didn't come on the scene until after the sentence. It didn't happen at Mr. Millen. If he was present at the time, probably would have advised the trial counsel otherwise than what actually happened in this particular case. Also ---- Counsel, the immigration would be, result would be the same whether it was one year or one year and a day. Is that correct? Correct. That's why the Quan Court ---- Has to go below one year. Has to go one day below. Isn't that a departure? And didn't you have an agreement there would be no departures? Well, the problem with the departure, now, if it went back to this Court, the, whether or not the guidelines which were not advisory at the time Ms. Rualtos was originally sentenced, the Court, I don't believe, was informed at all as to the immigration consequences. So we wouldn't know if the district court judge at that time would have departed down that extra day because as the declaration of trial counsel that was presented simply totally forgot all the immigration consequences, never raised the immigration consequences to the district court judge at sentencing to request a departure, never informed the appellant of the consequences, and this wasn't learned until the time that she received her mandatory deportation. Was the defendant's immigration status identified in the pretrial report? That she was a resident alien, I'm sure. So the district court was aware of the fact. Well, I don't know that, but I know that counsel was. Did the district court read the pre-sentence report? I would assume so. But that's not to say, what the Court is then trying to say is that, unlike Kwan, the district court should have realized the immigration consequences and advisor of that. Well, the district court didn't advisor of that. Government didn't advisor of that. And counsel didn't advisor of that. The question more to the point is, is the district court obliged to, because a copy of the pre-sentence report is given to the defendant and the defendant is stripped? Well, we're not asking. Our brief is the Sixth Amendment, the trial counsel in effective assistance, not whether or not the court advised, because the court makes the general obligatory advisement, if you're a resident alien, this will result in your deportation, denial of reentry, and so forth. That's done in every alien case. But in this particular case, very much like Kwan's case, the ramifications of counsel, failure to inform the defendant, failure to argue at sentencing, all this led to her mandatory deportation because of two days that were tacked on to her sentence. But Kwan requires that the counsel effectively mislead the alien, the defendant. I think it's Kwan said misstated, a misstatement. Okay. There's no statement here. And there's no statement here. But if the court looks, when the court reviews the Kwan decision at footnote 4, in the the Kwan is a Ninth Circuit case. In footnote 4 of that Kwan decision, it states as follows. The Second Circuit also discuss evidence that standards of attorney's competence may have evolved to the point that a failure to inform a defendant of the deportation consequences of a plea would by itself now be objectively unreasonable. So this Court has a, this case presents issues of do we evolve now that trial counsel has to and should, under the Sixth Amendment, advise all aliens or prisoners or resident aliens of the fact of the deportation consequences, which did not happen at all in this case, or apply the Kwan decision from this circuit and remand, vacate the sentence or man this back to a sentence of one day less than a year. I'll reserve my 22 seconds. You're actually over. The red light went on. That makes it over. Thank you. Go give it back to us. May it please the Court. I'm Michael Raffel on behalf of the United States. Your Honors, while the petition was not timely, I'd like to focus first on the merits. As to prejudice on the merits, as defense counsel argued, what defense counsel is asking for is a new sentence. In this case, it's unusual that we know from the district court in its ruling  on the motion here said 364 days is not a sentence that I would have imposed. But we don't know really whether if anybody who was participating in the proceedings recognized that Ms. Relatos, who was a lawful resident alien, would be mandatorily deported if it was 12 months, whether that judge would have done the same thing. That's what we don't know, right? Well, Your Honor, you're correct. We do not know as of the time of the guilty plea and as of the time of the sentencing whether Judge Feist would have changed his mind if he took that into account. But at the time of ruling on this motion, Judge Feist was fully informed by the motions in this case as to what was at stake here, and Judge Feist said 364 days is not a sentence that I would have imposed. So we know from him that there's no prejudice here, that even if the argument was made, he said this is not a sentence he would not have imposed. Now, on top of that, as Judge Hall pointed out, by the plea agreement, which gave defendants some significant benefits, defense counsel was foreclosed from making an argument of a departure-type argument, and so it couldn't have been made. But as to prejudice, it's striking about this case that Judge Feist has already told us that even if... You're saying on the hearing below? In the hearing below, page 6 of the excerpt of record where Judge Feist is ruling in court, he gives several reasons why he's denying the motion in this case, and one of those reasons is that he would not have imposed a lower sentence. And even before getting to prejudice, our position is because there is no affirmative misrepresentation, that's the term that's used in Quan, there isn't room to find ineffective assistance of counsel. Between this Court's decision in Frye, which holds that an attorney who's simply silent about deportation consequences is not enough, and Quan, which says that when it's an affirmative misrepresentation, that is enough, it might be an interesting question on a blank slate. The Cornell Law Review article in the... Second Circuit. Second Circuit dicta that counsel's referring to, but this isn't a blank slate. This Court has laid out that landscape between Frye and Quan. Quan goes over that and says several times that what causes the result in Quan is an affirmative misrepresentation. The misrepresentation in Quan was counsel telling the defendant that deportation was not a serious possibility, when it in fact was. The misrepresentation in the Cuoto case, the Second Circuit case that defendant cites, was defense counsel telling the defendant that after the plea, they can deal with the deportation consequences, and even telling the defendant that the district court judge could make a recommendation on deportation. That was wrong to tell the defendant that, so there were affirmative misrepresentations. Here, not only was there no affirmative misrepresentation, but the defendant was saying that deportation might result from the conviction. It's true that the defendant was not informed of all the details of how that might occur, but I don't think that's necessary, and it was in fact true that what defendant was informed of at the time of the guilty plea, one wouldn't have known what the sentence would be, and it was correct to say that deportation may be a consequence here. This issue of the defense counsel asking for the extra day is completely a red herring in this context, because as I think Judge Hall pointed out, a defendant is an aggravated felon whether or not the sentence for a theft offense is one year or one year and one day. So there was not even a tradeoff at that stage, once the range is 12 to 18 months and Judge Feist is sentencing within that range, there's nothing lost to the defendant in terms of the immigration consequences by defense counsel asking for the extra day. And that's the focus of defense counsel's declaration in this case, and that's just, it's misdirected because that's what defense counsel should have done to represent the client well, to get that benefit of good time credits. And there was no tradeoff, no loss to the client at that stage. Was mandatory deportation a result the government was seeking in this case? The government was not seeking that result, and we don't normally, and I would say, at least in the normal case, putting aside the terrorism type cases, the normal case, that's not something that we're supposed to be concerned about because we're seeking the proper sentence under the law. And here, in fact, we did agree in the plea agreement to recommend 10 to 14, right?  Yes. But, of course, the district court's prerogative to find a different guideline range as the defendant was informed the district court might do. And Judge Feist wanted to, his tentative was to impose 18 months. That's how the sentencing hearing started. And defense counsel did what's, of course, an unusually unusual job, good job, in talking the court down from 18 months to a 12-month sentence. Perhaps, who knows, but Judge Feist might have remembered something about that process in saying, ultimately, he would not have gone even lower than that. But what we do know is Judge Feist wanted to impose 18 months, he said, at the beginning of the sentencing hearing. So we're trying to impose the correct sentence. We were not seeking deportation. It also would be correct to say that we were not not seeking deportation. The immigration laws operate independently. And our agreement in the plea agreement at least shows that this wasn't something that we were after, but it is a legal consequence of the sentence that was imposed here. I'm glad to answer questions about the timeliness of the motion or any other questions about the merits if the Court would like. Otherwise, I'll submit them. All right. Thank you, counsel. Thank you, Your Honor. The United States v. Verlades is submitted.
judges: Beezer, Hall, Wardlaw